686 A.2d 785

RICHARD D. DIEHL, PLAINTIFF/RESPONDENT, v. CUMBER-LAND MUTUAL FIRE INSURANCE COMPANY, DEFEN-DANT/APPELLANT, AND MARKET TRANSITION FACILITY OF NEW JERSEY BY CSC INSURANCE SERVICES; NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued November 4, 1996—Decided January 9, 1997.

232

Before Judges LANDAU, WALLACE and KIMMELMAN.

*Frank G. Basile* argued the cause for appellant (*Basile & Testa,* attorneys; *Mr. Basile* and *Diane Vari,* of counsel and on the brief).

*Richard C. Borton* argued the cause for respondent *Richard D. Diehl (Michael N. Kouvatas,* attorney; *Mr. Borton,* on the brief).

*Arthur E. Donnelly* argued the cause for respondent Market Transition (*Montano, Summers, Mullen, Manuel, Owens & Gregorio,* attorneys; *David D. Duffin,* on the brief).

The opinion of the court was delivered by

WALLACE, Jr., J.A.D.

The issue here requires us to determine whether coverage should be afforded under an automobile liability insurance policy or under a homeowner's insurance policy. The motion judge found that the injury did not arise out of the use of an automobile and concluded that the homeowner's insurance policy provided

coverage for personal liability to a third party. We disagree and reverse.

The facts are relatively simple. On December 26, 1989, Plaintiff Richard Diehl was driving away from his home when he noticed his brother George Diehl approaching in a pickup truck. Richard pulled over to the side of the road. He got out of his vehicle, walked around the rear of the truck and was bitten in the face by George's dog, which was in the open cargo area of the pickup truck. The truck was owned by Theresa Brown and insured by the New Jersey Automobile Full Insurance Underwriting Association by its servicing carrier, CSC Insurance Services (CSC). At the time of the incident, George resided with his mother who had homeowner's insurance with defendant Cumberland Mutual Fire Insurance Company (Cumberland).

On February 21, 1990, plaintiff's attorney gave Cumberland notice of the claim. Cumberland retained East Company to investigate the claim. Following the investigation, Cumberland denied coverage.

On July 31, 1991, plaintiff filed a complaint against George alleging negligence as a result of the dog bite. On August 1, 1991, unrelated to plaintiff's complaint, Cumberland gave CSC notice of the claim, alleging that CSC's insured's vehicle was used in the incident and requesting that CSC telephone their office to discuss the matter. CSC wrote to Cumberland that it would investigate to "determine coverage."

George was served with plaintiff's complaint on August 15, 1991. Neither he nor his mother forwarded a copy of the complaint to Cumberland. However, on August 26, 1991, plaintiff's counsel sent a copy of the complaint to Cumberland. In October 1991, Cumberland wrote to George's mother requesting a copy of the complaint, but she did not respond until March 1992. On April 16, 1992, Cumberland wrote to her denying coverage for failure to comply with conditions and provisions of the policy.

Plaintiff filed a motion to serve Cumberland and to enter default. On August 21, 1992, the court denied the motion to serve Cumberland and granted the motion to enter default against George. A proof hearing was held on December 16, 1992, and the court entered judgment in favor of Richard against George in the total amount of $55,085.72.

George, with the consent of his mother, assigned to Richard all of his claims against Cumberland for its refusal to defend and indemnify him for the dog bite complaint and judgment. Richard then filed a complaint against Cumberland for damages and for the refusal to defend. Cumberland filed its answer alleging that the claim does not arise from any covered loss.

In December 1993, plaintiff's counsel wrote to CSC, describing the accident and enclosing a copy of the complaint. CSC did not reply. On November 31, 1994, plaintiff filed a motion to amend the complaint to join CSC. The motion was granted. CSC filed its answer in March, 1995, raising various defenses, including lack of coverage. CSC and Cumberland each filed a motion for summary judgment based on lack of insurance coverage. After argument, the motion judge granted CSC's motion and dismissed all claims against CSC on May 12, 1995. Plaintiff, who was not present at the argument, filed a motion for reconsideration of the order dismissing CSC from the action. On May 26, 1995, the court heard argument and denied plaintiff's motion for reconsideration. At the same hearing, the judge denied Cumberland's motion for summary judgment. The motion judge concluded that because a third party's injury caused by a dog sitting in the back of a vehicle does not arise out of a "use of the automobile" to trigger coverage of an automobile policy, Cumberland's homeowner's policy must provide coverage.

Plaintiff then filed a motion for summary judgment on liability. The motion judge granted the motion on June 29, 1995. In July, plaintiff moved for summary judgment seeking an award of damages and counsel fees. On September 15, 1995, the motion judge granted plaintiff's motion and entered judgment against Cumber-

land in the amount of $55,275.16 plus pre-judgment interest of $5,861.79 and counsel fees and costs of $2,590.

On appeal Cumberland contends that plaintiff's injuries are excluded from coverage under the homeowner's policy because they are covered under the automobile policy.

I

Cumberland's policy expressly excludes coverage for bodily injury arising out of the "maintenance, operation, ownership, or use ... of any ... motor vehicle ... owned or operated by ... any *insured.*"

*N.J.S.A.* 39:6B–1 requires every owner of a motor vehicle to insure against losses arising out of the "ownership, maintenance, operation or use of a motor vehicle." In order for CSC's liability insurance policy to cover this incident, the injury to Richard must have arisen out of the ownership, maintenance, operation or use of a motor vehicle.

Some general principles are helpful in reaching our decision. Initially, we note that "[w]hen members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations." *Sparks v. St. Paul Ins. Co.,* 100 *N.J.* 325, 337, 495 *A.*2d 406 (1985) (quoting *Kievit v. Loyal Protective Life Ins. Co.,* 34 *N.J.* 475, 482, 170 *A.*2d 22 (1961)). More importantly, there must be a "substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise." *Westchester Fire Ins. Co. v. Continental Ins. Co.,* 126 *N.J.Super.* 29, 38, 312 *A.*2d 664 (App.Div.1973), *aff'd o.b.,* 65 *N.J.* 152, 319 *A.*2d 732 (1974). *Westchester* was concerned with liability coverage where the plaintiff was struck by a stick thrown from the insured's car. In addressing whether this conduct constituted an act arising out of the use of the automobile, we articulated the substantial nexus test.

> The inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected. Whether the requisite connection or degree of relationship exists depends upon the circumstances of the particular case.
>
> [*Id.* at 38, 312 *A.*2d 664 (citation omitted).]

Recently, our Supreme Court instructed that the test developed in *Westchester* should be used in determining whether the facts reveal a "substantial nexus between the accident and the use of an automobile." *Lindstrom v. Hanover Ins. Co.*, 138 *N.J.* 242, 250, 649 *A.*2d 1272 (1994). In *Lindstrom,* the plaintiff had been shot in a drive-by shooting. *Id.* at 244, 649 *A.*2d 1272. The Court reviewed the developing case law in New Jersey and concluded that the random shooting that caused the plaintiff's gunshot injuries was an accident within the contemplation of the insurance coverage. *Id.* at 251–52, 649 *A.*2d 1272. The Court explained:

> In our view the automobile did more than provide a setting or an enhanced opportunity for the assault. In addition to allowing the assailant to be at the place of attack, it furnished the assailant with what he must have assumed would be both anonymity and a means of escape. The assailant would not likely have committed such an act of apparently random violence without the use of a car.
>
> [*Id.* at 252, 649 *A.*2d 1272.]

Consistent with *Lindstrom,* we are satisfied that automobile liability insurance should cover this injury caused by a dog bite to the face occurring while the dog was in the open rear deck of a pickup truck because it arose out of the use of the vehicle to transport the dog. Moreover, the bite incident was facilitated by the height and open design of the deck. In our view the act was a natural and foreseeable consequence of the use of the vehicle, and there was a substantial nexus between the dog bite and the use of the vehicle at the time the dog bit the plaintiff. *Cf. Smaul v. Irvington General Hosp.*, 108 *N.J.* 474, 530 *A.*2d 1251 (1987) (holding that driver who was assaulted by pedestrians when he stopped his car to ask directions is entitled to PIP benefits because incident "directly involv[ed] the use of this automobile").

We recognize that other jurisdictions have reached varying results in determining whether, for the purpose of extending

automobile liability insurance, a dog bite arose out of the use of a vehicle. *Compare Farmers Ins. Co. of Ariz. v. Till,* 170 *Ariz.* 429, 825 *P.*2d 954 (Ct.App.1992) (dog's attack on vehicle's passenger arose out of use of vehicle because vehicle's owner used "the 'inherent' design of pickup/camper to separate her passenger from her [dog]") *and Hartford Accident & Indem. Co. v. Civil Serv. Employees Ins. Co.,* 33 *Cal.App.*3d 26, 108 *Cal.Rptr.* 737 (Ct.App. 1973) (attack of passenger by dog transported in car involved use of automobile because vehicle was used "in the manner intended or contemplated by the insured") *and Hogle v. Hogle,* 167 *Conn.* 572, 356 *A.*2d 172 (1975) (car accident caused by driver's dog that jumped from rear seat to front left window arose out of use of car) *and Transamerica v. Farmers Ins. Exch.,* 463 *N.W.*2d 641 (N.D. 1990) (pedestrian's injuries caused by dog when she walked by insured's pickup truck on public street arose out of use of vehicle) *with Sanchez v. State Farm Mutual Automobile Ins. Co.,* 878 *P.*2d 31 (Colo.Ct.App.1994) (police officer's disabling injuries caused by dog when it jumped from suspect's vehicle and attacked did not arise out of use of vehicle in that "the dog's attack did not occur because it had been in the vehicle but rather because it sought to protect its master") *and American States Ins. Co. v. Allstate Ins. Co.,* 484 *So.*2d 1363 (Fla.Dist.Ct.App.1986) (injury to truck passenger from dog which was riding in back of pickup truck and bit passenger did not arise from use of truck because truck was used to go to store while dog and passenger merely accompanied trip) *and Alvarino v. Allstate Ins. Co.,* 370 *Pa.Super.* 563, 537 *A.*2d 18 (1988) (injuries caused when dog bit passenger in van did not arise from use of van) *and Heringlake v. State Farm Fire & Casualty Co.,* 74 *Wash.App.* 179, 872 *P.*2d 539 (1994) (no causal connection where dog bit child in back of pickup truck even though dog was frequently transported in truck, dog's food and blanket were kept in truck, and dog was considered security for truck).

It is not disputed that Cumberland's insurance policy excluded coverage for bodily injury arising out of the use of a motor vehicle. As we conclude that the dog bite here had a substantial nexus to the use of a motor vehicle and arose out of the use of a motor

vehicle, the exclusion applies to bar plaintiff's recovery from Cumberland. It was error not to grant summary judgment in favor of Cumberland.

Reversed.