FELDKAMP, et al., Appellees,

v.

USAA INSURANCE COMPANY, Appellant.

[Cite as *Feldkamp v. USAA Ins. Co.* (2000), 139 Ohio App.3d 118.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 98–L–271.

Decided May 12, 2000.

*Kerry S. Volsky,* for appellees.

*John K. Benintendi,* for appellant.

WILLIAM M. O'NEILL, Judge.

In the following accelerated calendar appeal, appellant, USAA Insurance Company ("USAA"), appeals from the decision of the Lake County Court of Common Pleas granting summary judgment to appellee, Sharyn J. Feldkamp. Feldkamp had filed a declaratory judgment action seeking to compel USAA to provide coverage to Scott Baillie[1] under their automobile insurance policy with

---

1. The parties have alternatively spelled the name "Baillie," "Baillee," and "Baille." We will follow the court of common pleas and use the denomination "Baillie."

Baillie. Feldkamp was attacked by Baillie's dogs next to his vehicle. The judgment rendered by the court of common pleas requires USAA to defend Scott Baillie and indemnify him for any liability imposed up to the limits of the policy.

The underlying incident occurred on July 2, 1996. Scott Baillie, who is not a resident of the state of Ohio, was visiting his invalid brother William Baillie in Willoughby, Ohio. Scott did not testify in this matter by deposition or otherwise. He had intended to stay for several weeks to assist his brother and his wife Francis because she was having cataract surgery. Scott came to visit in his van, which had been modified into a mobile home. The vehicle had facilities to cook, water, a place to sleep, clothes storage, etc. Scott brought his two dogs, which are part wolf, with him. Francis Baillie testified at her deposition that Scott had told her the dogs were trained as watch dogs and that they were taught to protect the vehicle. While he was visiting, the dogs were kept in Scott's van or, due to the summer heat, sometimes on the porch of the house, but never in the house.

Feldkamp worked for Francis Baillie, providing assistance with the custodial care of William Baillie. On July 2, 1996, Feldkamp arrived at Francis Baillie's home at 9:00 a.m. Later that morning, Scott and Francis left the house to go shopping. Immediately prior to leaving, Scott moved his dogs from the porch to his van, and left the van door open, presumably due to the heat (eighty-five degrees). Francis testified that Scott had tried to teach Feldkamp a few commands for the dogs, but the dogs had not responded to Feldkamp. After they had been gone for a while, Feldkamp decided to check on the dogs and see if they were still in the van. She walked out the front door and onto the front lawn, looking over at the van trying to spot the dogs. Feldkamp testified she was ten to twenty feet from the van when she saw the dogs. Upon seeing them, she said something like "Hi, guys." The dogs responded by growling and baring their teeth. Feldkamp, sensing trouble, turned and headed for the house. Both dogs attacked her, and continued biting her until she was able to get back into the house. The attack lasted somewhere between "a few seconds" and twenty seconds, according to Feldkamp's varying estimates.

On February 19, 1998, Feldkamp filed a declaratory judgment action against USAA, alleging USAA had an obligation to defend and indemnify Scott Baillie under a contract of automobile insurance. As there was no privity of contract between Feldkamp and USAA, we are hesitant to say that a third-party has standing to bring a declaratory judgment action. Initially, in its answer filed on March 3, 1998, USAA did assert the affirmative defense that Feldkamp had failed to join necessary parties pursuant to Civ.R.19 and 19.1. However, this issue was dropped from its subsequent motion for summary judgment filed on May 18, 1998. USAA only addressed the issue that is now presented on appeal. The

record on appeal does not indicate whether the questions of joinder or standing were addressed by the trial court, but there is no claimed error in this regard. Consequently, we shall only address the issue raised on appeal.

In its answer, USAA admitted Scott Baillie had a policy in effect on July 2, 1996, but denied the policy provided for defense and indemnification for the incident that occurred. It asserted the affirmative defenses that no coverage existed under the policy and that it had no duty to defend the case. On May 19, 1998, USAA filed a motion for summary judgment. On August 19, 1998, Feldkamp also filed a motion for summary judgment. On December 10, 1998, the court granted Feldkamp's motion for summary judgment. Within its judgment entry granting summary judgment in favor of Felkamp, the trial court did not set forth findings of facts or conclusions of law, other than its ruling, which simply stated "it is clear that the plaintiffs' injuries arose out of Scott Baillie's ownership, maintenance and use of his vehicle," and that USAA owed a duty to defend and indemnify Baillie for the incident.

Both parties had agreed the only issue for the court to decide was whether or not the insurance policy provided coverage for the dog attack on Feldkamp. In reaching its conclusion, the court must have relied upon the facts that the parties either agreed upon, or did not dispute, construing them most favorably for USAA. USAA admitted the attack occurred as Feldkamp described it. Feldkamp admits the dogs jumped out of the van, and that the attack occurred some distance away from the vehicle. It was also agreed that Scott Baillie owned the dogs, that the dogs were presently living in the van, and that he had left the van door open that morning. There was no dispute that Scott had a valid policy with USAA, or that an injury had occurred. One fact asserted by Feldkamp, which USAA never addressed, was that the dogs were trained as guard dogs. It is unclear whether the court considered that fact as true or as significant.

In reaching its conclusion, the trial court rejected USAA's proposed definition of the policy terms. The policy language at issue is as follows:

"DEFINITION:

"Covered person as used in this part means:

"(1) You or any family member for the ownership, maintenance or use of any automobile, snowmobile or trailer * * *.

"INSURING AGREEMENT

"We will pay damages for BI or PD for which any covered person becomes legally responsible because of an auto accident. We will settle and defend, as we consider appropriate, any claim or suit asking for these damages."

USAA proposed that the policy only covered incidents that occurred while the vehicle was being operated. Feldkamp argued that coverage was not limited to the operation of the vehicle, but rather extended to incidents arising out of ownership, maintenance, or use of the vehicle. She argued that the van was being used as a home for the dogs, and that the dogs were an alarm/guard system for the van. She argued this constituted a use of the van for purposes of coverage, and that by leaving the dogs in the van that morning with the van door open, this use of the van ultimately caused the accident. The trial court agreed, ruling for Feldkamp, finding the injuries arose out of Scott Baillie's ownership, maintenance, and use of his vehicle. From this judgment, USAA timely filed notice of appeal, assigning the following error:

"The trial court committed prejudicial error in granting plaintiff-appellees' motion for summary judgment and in denying defendant-appellant's motion for summary judgment."

The standard of review of a motion for summary judgment is the same for both a trial court and an appellate court. *Erie Ins. Co. v. Stalder* (1996), 114 Ohio App.3d 1, 4, 682 N.E.2d 712, 713–714. Civ.R. 56(C), provides the standard governing motions for summary judgment, stating that:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

In construing Civ.R. 56(C), the Supreme Court of Ohio has stated that the moving party bears the burden of establishing that: (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47; *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 46–47, 517 N.E.2d 904, 906–907.

In the instant case, the parties are not contesting the material facts. The question is whether the policy, according to its terms, provided coverage

under these facts. Insurance contracts must be construed in accordance with the same rules as other written contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102, citing *Universal Underwriters Ins. Co. v. Shuff* (1981), 67 Ohio St.2d 172, 21 O.O.3d 108, 423 N.E.2d 417. The construction of written contracts is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146. USAA claims its policy language is clear and unambiguous and does not provide coverage for dog bites. Feldkamp argues the policy terms are ambiguous, and therefore must be construed against the insurer, and that the dog attack was an accident that arose out of the use of the vehicle.

▮ Initially, we must determine whether the terms of the contract are ambiguous. The phrase in question is "auto accident." The first rule in construing insurance contracts is that when words and language have plain and ordinary meaning, it is unnecessary and impermissible for the court to resort to construction of that language. *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 12, 540 N.E.2d 716, 717–718. Words and phrases used must be given their natural and commonly accepted meaning, where they possess such meaning, to the end that a reasonable interpretation of the contract consistent with the apparent object and plain intent of the parties may be determined. *Gomolka v. State Auto. Mutl. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 275–276, 436 N.E.2d 1347, 1348.

USAA argues that the term "auto accident" in the context of its policy is clear and unambiguous. Its definition is comprised of three parts. First, there must be an unforeseen event or occurrence, second, this event must occur while the auto is being operated, and third, an injury must occur. The crux of its argument is that the accident did not occur while the vehicle was being operated, and therefore was not an accident within the terms of its policy. Given that the policy's definition of a covered person encompasses coverage for the ownership, maintenance, or use of a vehicle, we find that the adoption of USAA's definition would place limitations on the policy contrary to the ordinary meaning of its terms.

▮ The insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect. *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488, 490. If USAA only intended to cover accidents that occur while the vehicle is being operated, it should have stated so specifically. The policy states that it covers the insured for ownership, maintenance, or use of any automobile when the person becomes legally responsible as the result of an auto accident. First, the policy opens itself to coverage of accidents arising out of ownership or maintenance wherein the vehicle is not being operated in the

commonly understood sense. For example, a vehicle could be parked on a hill when its braking system fails, causing the car to roll, causing an accident. Second, the word "use" could be understood as "operation", but it could also be understood to include the "use" that Feldkamp suggested, and the trial court adopted, that the vehicle in question was "used" to house the dogs. Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, at syllabus. Based on the language USAA chose, it cannot limit coverage to accidents that occur only when the vehicle is being operated.

However, given that, "[t]his does not mean * * * that a strained, unnatural and forced meaning should be given words or phrases, but rather the everyday meaning, which must have been plainly in the minds of the contracting parties." *New Amsterdam Casualty Co. v. Johnson* (1914), 91 Ohio St. 155, 158, 110 N.E. 475, 475. In *Kish v. Central Nat. Ins. Group* (1981), 67 Ohio St.2d 41, 21 O.O.3d 26, 424 N.E.2d 288, the Supreme Court of Ohio held that language substantially similar to the language in the case at bar was *not* ambiguous. *Id.* at 52, 21 O.O.3d at 33, 424 N.E.2d at 295. The ambiguity in the present case is not necessarily the result of the language being, *per se*, ambiguous, but rather the result of USAA proposing a definition in an effort to limit the policy's coverage. In so doing, USAA created a second definition apart from the ordinary meaning of the language, hence creating ambiguity where perhaps there was none. The plain and ordinary meaning of the language, as was suggested by Feldkamp, is that the event that triggers coverage is an accident, which is an unexpected or unintended happening arising out of the ownership, maintenance, or use of an automobile. For purposes of evaluating the trial court's grant of summary judgment, we will adopt this definition.

The leading case in this area is *Kish.* Kish was in his car, stopped at a light, when another car collided into the back of his car. Kish got out of his car and began walking towards the other car when its driver emerged with a shotgun. Kish turned to return to his car but could not get back in before the other driver shot him to death. Kish's estate made a claim on his automobile policy under the uninsured motorist provision. While *Kish* dealt with several issues not applicable to this case, the court held that the shotgun slaying of Kish following the automobile collision did not arise out of the ownership, maintenance, or use of an (uninsured) vehicle. The death did not result from the collision of an automobile for purposes of automobile accident coverage.

The *Kish* court stated "[t]he relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle." *Kish* at 50, 21 O.O.3d at 32, 424 N.E.2d at 294. While

the inquiry into events to determine if they are "related to the use of the vehicle" may seem to create a broad scope that might impose coverage on a variety of events, the Supreme Court's subsequent application and explanation of this test limits coverage to events intrinsically related to the operation of a vehicle. In *Kish* the act of violence occurred right next to the vehicles immediately after their collision, yet the court held this act was "independent of the use of the vehicle as such." The court specifically rejected the use of a "but for" analysis as the means for establishing the causal link. *Id.* at 50, 21 O.O.3d at 32, 424 N.E.2d at 294. It is clear that if the tortfeasor had not been in his car, collided with the other car, and used the car to transport a shotgun, the incident would never have occurred. However, the court ruled that these facts did not bring the event within the scope of coverage provided for by the insurance policy. A key factor in the *Kish* court's analysis was that the vehicle itself was not the instrumentality of the injury. *Id.* at 51, 21 O.O.3d at 32–33, 424 N.E.2d at 294–295.

The next Supreme Court of Ohio case to examine the issue was *Howell v. Richardson* (1989), 45 Ohio St.3d 365, 544 N.E.2d 878. In *Howell,* the occupants of two vehicles got into a verbal confrontation while at a stop. They then followed and chased each other. It ultimately ended when, as the victim's vehicle was accelerating towards the tortfeasor's, the tortfeasor fired a gun from his vehicle. The bullet hit the windshield of the charging car and lodged in the head of the victim. The court stated that "[b]odily injury to an insured resulting from the discharge of a firearm by a tortfeasor is not encompassed within the terms of a policy of insurance which limits coverage to injuries 'caused by accident resulting from the ownership, maintenance or use of' an automobile." *Id.,* second paragraph of syllabus. In reference to *Kish,* the court stated "[t]he focus of the holding was * * * the instrumentality causing death." *Id.* at 369, 544 N.E.2d at 882.

In 1995, the Supreme Court of Ohio revisited the issue for a third time in a case wherein a lady was kidnapped in her own car by the driver of another car that had collided with her. After the collision, the driver jumped into her car and pulled out a gun. At that point, the court noted, it was undisputed that her car became an uninsured motor vehicle. He drove her in her car to a house, took her inside, and raped her. None of her bodily injuries occurred while being transported in her car. She made a claim for compensation under the uninsured motorist provision of her policy. The policy language at issue was essentially the same as in *Howell* and *Kish,* and also the case *sub judice.* Again, the court held there was no coverage under the automobile insurance policy. The key factor leading to this resolution was that all the bodily injuries Mrs. Lattanzi sustained occurred outside of and away from the automobile. See *Lattanzi v. Travelers Ins. Co.* (1995), 72 Ohio St.3d 350, 650 N.E.2d 430.

In *Kish,* the Supreme Court of Ohio rejected a "but for" analysis in establishing the causal link that ultimately determines whether recovery should be allowed under a policy. *Kish,* at 50, 21 O.O.3d at 32, 424 N.E.2d at 294. Because the injury occurred away from the vehicle, Feldkamp's argument relies on a "but for" analysis. This leads to the strained and unnatural result whereby a dog attack is converted to an automobile accident. It may be true that if the dogs were not guard dogs, if they were not living in the van, and if the van door was not left open, the injury would not have occurred twenty feet away from the car. However, instead of using a "but for" analysis, *Kish, Howell,* and *Lattanzi* focus on the instrumentality causing the injury, whether or not this instrumentality was intrinsically related to the use of the vehicle, and whether the chain of events leading to the injury was broken by an intervening event unrelated to the use of the vehicle.

In the present case, the vehicle itself was not the instrumentality causing the injury. Nor do we find the placement of guard dogs in a vehicle is intrinsically related to the use of a vehicle. We would hesitate to create a rule whereby people may place guard dogs around their vehicle knowing their automobile insurance policy would subsequently cover the expense of any injury the dogs caused. As in *Kish,* the injuries in this case occurred outside and away from the vehicle. But in the present case, there was not even a car crash immediately preceding the event. In *Kish,* there was a tighter nexus between the use of the vehicle and the injury than in the present case, yet in *Kish* the court determined that there was no coverage. We find that dogs attacking a person ten to twenty feet away from their vehicle is not intrinsically related to the ownership, maintenance, or use of a vehicle within the terms of the auto insurance policy at issue in this case.

In Feldkamp's brief in opposition to defendant's motion for summary judgment, she cites *Transam. v. Farmers Ins. Exchange* (N.D.1990), 463 N.W.2d 641, and *Diehl v. Cumberland Mut. Fire Ins. Co.* (A.D.1997), 296 N.J.Super. 231, 686 A.2d 785, in support of her argument for automobile insurance coverage for dog bites. In both of those cases, the dog was inside the vehicle when it bit a pedestrian. Under those facts, we might reach a different conclusion. However, in the present case, there is simply not a tight enough nexus between the vehicle and injury. Feldkamp was the unfortunate victim of a dog attack, not an auto accident.

Appellant USAA's assignment of error has merit. The judgment of the trial court is reversed. Judgment is entered in favor of USAA.

*Judgment reversed.*

CHRISTLEY, P.J., and NADER, J., concur.