775 A.2d 514 (2001)
341 N.J. Super. 346
FARMERS' MUTUAL INSURANCE COMPANY OF SALEM COUNTY, Plaintiff-Respondent,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Respondent/ Cross-Appellant, and
William Fuse and Claudia Fuse, Defendants-Respondents, and
Shirley Michelle Bradley, as natural guardian of Kareemah Johnson, a minor, and Administratrix Ad Prosequendum of Kevin Johnson, Jr., and Kevin H. Johnson, Sr., Defendants-Appellants/ Cross-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued April 3, 2001.
Decided May 16, 2001.
*515 Mark D. Abramson, argued the cause for appellants/cross-respondents (Leyden & Leyden, attorneys, Hackensack; Mr. Abramson, on the brief).
Mauro C. Casci, Leonardo, argued the cause for respondent Farmers Mutual Insurance Company (Vicki A. Shea, Peterson, on the brief).
Francis X. Ryan, Cherry Hill, argued the cause for respondent/cross-appellant Allstate Insurance Company (Green, Lundgren & Ryan, attorneys; Mr. Ryan, on the brief).
Respondents William Fuse and Claudia Fuse did not file a brief.
Before Judges SKILLMAN, CONLEY and LESEMANN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether the owners of a boat are provided insurance coverage under their homeowners policy or their watercraft liability policy for a swimming accident involving passengers on the boat that occurred while the boat was grounded on a sandbar in the middle of a river.
On August 3, 1996, defendants William and Claudia Fuse went on a boating trip in the Salem River on their thirty-two foot motorized watercraft. The passengers included two young children, Kareemah and Kevin H. Johnson, Jr., who were siblings. The Fuses navigated their boat to a sandbar at the mouth of the river, turned off the engine, and dropped the anchor. The children went swimming, using a swim platform at the back of the boat to enter the water. The Fuses remained on the boat. At some point, the children, who were not wearing life jackets, got in water that was over their heads and began to float away. Mr. Fuse jumped in the water and was able to rescue Kareemah. However, Kevin was pulled below the surface and drowned.
On the date of this accident, the Fuses had a watercraft liability policy, issued by defendant Allstate Insurance Company (Allstate), which provided in pertinent part:

*516 We will pay all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage resulting from the ownership, maintenance, or use of covered watercraft, boat equipment or boat trailers.
The Fuses also had a homeowners policy, issued by plaintiff Farmers' Mutual Insurance Company of Salem County (Farmers), which contained an exclusion from liability coverage, discussed in greater detail later in this opinion, for "bodily injury ... arising out of ... or use ... of any ... watercraft owned or operated by... any insured."
Anticipating that the swimming accident would result in a personal injury action against the Fuses, Farmers brought this coverage action against Allstate, the Fuses, Kevin Jr.'s estate, and Kareemah's and Kevin Jr.'s father and mother, Kevin H. Johnson, Sr. and Shirley Michelle Bradley. Farmers' complaint sought a declaration that because the accident arose out of the Fuses' use of their boat, the watercraft policy issued by Allstate provides coverage and the homeowners policy issued by Farmers excludes coverage for the accident.
Ms. Bradley was subsequently appointed administratrix of Kevin Jr.'s estate. While this coverage action was pending, she and the children's father, Kevin Sr., filed a wrongful death and survivorship action on behalf of Kevin Jr.'s estate and a personal injury action on behalf of Kareemah.
After discovery was completed in the coverage action, Farmers brought the matter before the trial court by a motion for summary judgment. The court ruled in Farmers' favor and entered final judgment, declaring that Farmers has no duty to defend or indemnify the Fuses and that Allstate is obligated to defend and indemnify the Fuses in connection with any and all claims arising out of the accident. The court concluded that the children's swimming by the side of the boat was "part of the continuous boating outing and activities that were part of the usage of [the] watercraft."
No New Jersey case has considered the coverage provided by a watercraft liability policy such as Allstate issued to the Fuses or the parallel exclusion from coverage for watercraft-related accidents in the Farmers homeowners' policy. However, there is a long line of New Jersey case law interpreting coverage provisions in automobile liability policies comparable to the coverage provision of the Allstate watercraft liability policy as well as the standard exclusion in homeowners' policies for accidents arising out of the use of an automobile, which is the same exclusion applicable to an accident arising out of the use of a watercraft. See, e.g., Home State Ins. Co. v. Continental Ins. Co., 313 N.J.Super. 584, 589-94, 713 A.2d 557 (App.Div.1998), aff'd o.b., 158 N.J. 104, 726 A.2d 1289 (1999); Diehl v. Cumberland Mut. Fire Ins. Co., 296 N.J.Super. 231, 235-38, 686 A.2d 785 (App.Div.), certif. denied, 149 N.J. 144, 693 A.2d 112 (1997); Daus v. Marble, 270 N.J.Super. 241, 248-50, 636 A.2d 1091 (App.Div.1994); Scarfi v. Aetna Cas. & Sur. Co., 233 N.J.Super. 509, 559 A.2d 459 (App.Div.1989); Williamson v. Continental Cas. Co., 201 N.J.Super. 95, 492 A.2d 1028 (App.Div.1985); Westchester Fire Ins. Co. v. Continental Ins. Cos., 126 N.J.Super. 29, 312 A.2d 664 (App.Div.1973), aff'd o.b., 65 N.J. 152, 319 A.2d 732 (1974). Therefore, it is appropriate to look to those cases for guidance in deciding the coverage issue presented by this appeal.
In Westchester Fire Ins. Co. v. Continental Ins. Cos., supra, 126 N.J.Super. 29, 312 A.2d 664, in which a passenger in an automobile threw a stick out of a *517 moving car, striking and injuring a passing bicyclist, we held that the automobile liability policies issued to the parents of the driver and passenger, which insured against any claim "arising out of the ownership, maintenance or use" of an automobile, provided coverage for the accident. We stated that "[i]n the phrase `ownership, maintenance or use,' the term `use' is the key word," and this word encompasses "all proper uses of the vehicle not falling within the term `ownership [and] maintenance.' " Id. at 36, 312 A.2d 664. Thus, although "the word `operation' denotes the manipulation of the car's controls in order to propel it as a vehicle[,] ... one can use a car without operating it." Ibid. (quoting Indemnity Ins. Co. of N. Am. v. Metropolitan Cas. Ins. Co. of New York, 33 N.J. 507, 513, 166 A.2d 355 (1960)). We also stated that "the phrase `arising out of' must be interpreted in a broad and comprehensive sense to mean `originating from' or `growing out of' the use of the automobile[,]" and that "[s]o interpreted, there need be shown only a substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise." Id. at 38, 312 A.2d 664. Consequently, the ultimate question in determining the scope of the coverage provided by such an automobile liability policy is "whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected." Ibid. Applying this test, we concluded that "it was within the reasonable expectation of the parties" that the persons insured under the automobile liability policies would be "provided with protection against the consequences" of throwing a stick out of a car. Id. at 39, 312 A.2d 664. We also concluded that the homeowners' policies issued to the parents did not provide coverage, because the language of the homeowner's and automobile liability policies is "mutually exclusive" and the homeowner's policy "is specifically designed to exclude the coverage provided under language in the standard family automobile policy for injuries arising out of the use of the motor vehicle insured thereunder." Id. at 41-42, 312 A.2d 664.
The breadth of the coverage provided under an automobile liability policy containing language similar to the watercraft liability policy issued by Allstate is illustrated by our decision in Diehl v. Cumberland Mut. Fire Ins. Co., supra, 296 N.J.Super. 231, 686 A.2d 785. In that case, the operator of a pickup truck had placed his dog in the open cargo area of the vehicle. While the pickup truck was parked by the side of the road, a person walked around the rear of the truck and was bitten in the face by the dog. We concluded that the dog bite was a natural and foreseeable consequence of the use of the vehicle, and consequently the automobile liability policy insuring the driver provided coverage for the accident:
[W]e are satisfied that automobile liability insurance should cover this injury caused by a dog bite to the face occurring while the dog was in the open rear deck of a pickup truck because it arose out of the use of the vehicle to transport the dog. Moreover, the bite incident was facilitated by the height and open design of the deck. In our view the act was a natural and foreseeable consequence of the use of the vehicle, and there was a substantial nexus between the dog bite and the use of the vehicle at the time the dog bit the plaintiff.
[Id. at 236, 686 A.2d 785.]
*518 We also concluded that a homeowner's policy insuring the driver did not provide coverage because "the dog bite ... had a substantial nexus to the use of a motor vehicle and arose out of the use of a motor vehicle." Id. at 237-38, 686 A.2d 785.
Applying the principles set forth in Westchester and Diehl, we conclude that the watercraft liability policy issued by Allstate provided coverage to the Fuses for the claims arising out of the drowning of Kevin Johnson, Jr. and the near drowning of his sister Kareemah. The accident occurred during the course of a boat outing near a sandbar in the middle of a river that could be reached only by boat. The children entered the water from a swimming platform located at the rear of the boat, and the Fuses remained on the boat while the children swam. Moreover, one of the claims advanced in the underlying personal injury action is that the Fuses were negligent in allowing the children to swim without putting on the lifejackets that are required to be kept on a boat for the safety of children and other occupants. Thus, a substantial nexus existed between the use of the boat and the accident. Moreover, the Fuses could reasonably have expected that their watercraft liability policy would cover them for any swimming accident that occurred while they were using the boat.
We recognize that the watercraft liability policy the Fuses obtained from Allstate provided coverage for bodily injury "resulting from" the use of a covered watercraft, rather than employing the "arising out of the use" language contained in the policies involved in Westchester and Diehl, and that some cases have suggested that such language may require a showing of a "strict causal relationship between the `ownership, maintenance or use' of the automobile," (or in this case, the boat), "and the claim made against the insured." Home State Ins. Co. v. Continental Ins. Co., supra, 313 N.J.Super. at 587, 713 A.2d 557; see also Westchester Fire Ins. Co., supra, 126 N.J.Super. at 37-38, 312 A.2d 664. However, our courts have applied the "substantial nexus" and "risk against which [the policyholder] might reasonably expect [to be] insured under the policy" tests set forth in Westchester and Diehl in construing policies that did not employ "arising out of the use" language. See, e.g., Lindstrom v. Hanover Ins. Co., 138 N.J. 242, 250, 649 A.2d 1272 (1994); Smaul v. Irvington Gen. Hosp., 108 N.J. 474, 477-78, 530 A.2d 1251 (1987). For example, in construing the scope of statutorily mandated personal injury protection (PIP) coverage provided a pedestrian for "bodily injury [sustained] as a result of an accident... caused by an automobile or by an object propelled by or from an automobile," N.J.S.A. 39:6A-4, the Court stated:
In determining whether the facts reveal a substantial nexus between the accident and the use of an automobile, we apply the test developed in the liability-coverage context in Westchester Fire, supra, 126 N.J.Super. 29, 312 A.2d 664, which held that the
inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected.
[Lindstrom v. Hanover Ins. Co., supra, 138 N.J. at 250, 649 A.2d 1272 (quoting Westchester Fire Ins. Co., supra, 126 N.J.Super. at 38, 312 A.2d 664.)]
In view of our courts' expansive use of the tests set forth in Westchester and Diehl, *519 we conclude that, notwithstanding the "resulting from" language employed in the Allstate policy, it is appropriate to apply the "substantial nexus" and "risk against which [the policyholder] might reasonably expect [to be] insured" tests in determining the scope of the coverage provided thereunder.
Because we conclude that the swimming accident had a substantial nexus to the use of the boat, and that the Fuses had coverage for the accident under their Allstate watercraft liability policy, it follows that the accident was excluded from coverage under the homeowner's policy issued by Farmers. In fact, the language of the exclusion in the Farmers' policy for watercraft-related accidents is even broader than the coverage language of the Allstate policy. That exclusion states:

We do not provide insurance under Section II for any sort of damages, expenses, liability, or loss directly or indirectly, wholly or partially, aggravated by, consisting of, or resulting from the followingeven if an occurrence otherwise covered contributes to such concurrently or any sequence.
1. AIRCRAFT; MOTOR VEHICLES; WATERCRAFT
We do not cover bodily injury or property damage arising out of:
A. The maintenance, operation, ownership, or use (including loading or unloading) of any aircraft, motor vehicles, or watercraft owned or operated by, or rented or loaned to, any insured.

(Emphasis added.)
Thus, this exclusion not only contains the same "arising out of the use" language as the policies construed in Westchester and Diehl, but also expressly excludes coverage under any theory of concurrent contributing causes. Compare Salem Group v. Oliver, 128 N.J. 1, 3-4, 607 A.2d 138 (1992) (holding that a homeowners' policy, in which the exclusion language, unlike that in the Farmers' policy, did not extend to "an occurrence otherwise covered [that] contributes to [damages] concurrently," provided coverage for a claim against a social host for allegedly serving alcoholic beverages to a minor who was subsequently involved in a motor vehicle accident, because the policy did not "unambiguously exclude[] coverage for an accident caused concurrently by the operation of a motor vehicle and the provision of alcoholic beverages."). Therefore, the trial court correctly concluded that the Farmers' policy does not provide coverage to the Fuses for the swimming accident.
Affirmed.