946 A.2d 592 (2008)
400 N.J. Super. 147
PENN NATIONAL INSURANCE COMPANY, Plaintiff,
v.
Frank COSTA, Jeanne Costa, CWL Contracting/Franco Leasing, Defendants, and
Farmers Insurance Company of Flemington, Defendant/Third-Party Plaintiff-Appellant,
v.
Ernest D. Arians, Third-Party Defendant, and
Gulf Insurance Company, Third-Party Defendant-Respondent.
No. A-5162-06T3.
Superior Court of New Jersey, Appellate Division.
Argued April 14, 2008.
Decided April 29, 2008.
Anthony P. Pasquarelli argued the cause for appellant (Sweet Pasquarelli, attorneys; Mr. Pasquarelli, on the brief).
*593 John H. Maucher, Cherry Hill, argued the cause for respondent (Mintzer Sarowitz Zeris Ledva & Meyers, attorneys; Mr. Maucher, on the brief).
Before Judges LINTNER, GRAVES and SABATINO.
The opinion of the court was delivered by
LINTNER, P.J.A.D.
The issue here requires us to determine whether coverage should be afforded under an automobile liability insurance policy or under a homeowner's insurance policy. The motion judge, relying on Wakefern Food Corp. v. Gen. Accident Group, 188 N.J.Super. 77, 455 A.2d 1160 (App.Div.1983), found that, because the accident arose from the negligent accumulation of ice and snow, coverage for personal injury liability to a third party fell under the homeowner's policy and not the automobile policy. We reverse and remand for entry of judgment in favor of the homeowner's insurance carrier.
The facts are undisputed and relatively straightforward. On January 20, 2004, Frank Costa was changing a flat tire on his Ford pickup truck located in his driveway. At the time, Costa was the owner of Fleet Truck and Trailer Repair, a business that repairs eighteen-wheelers, which is located next to Costa's home. Ernest Arians was a mechanic employed by Costa's business. Arians was on lunch break, walking on the driveway in the vicinity of Costa when he noticed Costa was replacing the tire. As he approached Costa, he asked Costa if he needed any help. While Costa responded, "No, I'll do it, I'll take care of it, go to lunch," Arians slipped on ice and fell forward, striking his head on the top of the post of the bumper jack protruding from behind the pickup truck. Arians sustained multiple face, head, and skull fractures, requiring surgical intervention and causing him to lapse into a coma, develop blood clots, and suffer from cognitive and mental deficits.
At the time of the accident, Costa was covered by a commercial automobile policy issued by Gulf Insurance Company (Gulf) and a homeowner's policy issued by Farmers Insurance Company (Farmers). Arians' personal automobile carrier, Penn National Insurance Company (Penn National), provided Personal Injury Protection (PIP) benefits to Arians. Arians filed a personal injury suit against Costa. Meanwhile, Penn National filed a subrogation suit to recover its PIP payments, naming Farmers, Costa, and Costa's business.[1] Farmers answered and named Arians and Gulf as third-party defendants, seeking a declaration that it did not provide coverage. Arians' complaint and Penn National's complaint were eventually consolidated. Cross-motions for summary judgment were filed by both Farmers and Gulf. The order determining that coverage lay with Farmers was entered on May 24, 2007. Arians later settled his personal injury suit and a consent judgment was entered in the amount of $400,000. Farmers satisfied the judgment and filed this appeal.
On appeal, Farmers asserts that Arians' injuries are excluded from coverage under its homeowner's policy because they are covered by Gulf's automobile policy. Gulf *594 counters that coverage was under Farmers' policy.
Farmers' policy expressly excluded "bodily injury . . . arising out of . . . [t]he maintenance, operation, ownership, or use (including loading or unloading) of any . . . motor vehicles . . . owned or operated by . . . any insured." N.J.S.A. 39:6B-1 requires owners of motor vehicles to have liability coverage "insuring against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a motor vehicle."
Our courts have considered the phrase "ownership, maintenance and use" in the context of the word "use" on many occasions, starting with Westchester Fire Ins. Co. v. Continental Ins. Cos., 126 N.J.Super. 29, 35, 312 A.2d 664 (App.Div. 1973), aff'd, 65 N.J. 152, 319 A.2d 732 (1974). See, e.g., Lindstrom v. Hanover Ins. Co., 138 N.J. 242, 649 A.2d 1272 (1994), overruled on other grounds, Shaw v. City of Jersey City, 174 N.J. 567, 811 A.2d 404 (2002); Smaul v. Irvington Gen. Hosp., 108 N.J. 474, 530 A.2d 1251 (1987); Farmers' Mut. Ins. Co. of Salem County v. Allstate Ins. Co., 341 N.J.Super. 346, 775 A.2d 514 (App.Div.2001); Svenson v. Nat'l Consumer Ins. Co., 322 N.J.Super. 410, 731 A.2d 91 (App.Div.1999); Stevenson v. State Farm Indem. Co., 311 N.J.Super. 363, 709 A.2d 1359 (App.Div.1998); Diehl v. Cumberland Mut. Fire Ins. Co., 296 N.J.Super. 231, 686 A.2d 785 (App.Div.), certif. denied, 149 N.J. 144, 693 A.2d 112 (1997).
"[T]he term `use' . . . is a broad catch-all designed to include all proper uses of the vehicle not falling within the term `ownership [and] maintenance.'" Westchester, supra, 126 N.J.Super. at 36, 312 A.2d 664 (citations omitted) (third alteration in original). In Westchester, the plaintiff was injured when a passenger in a car threw a stick out the window. The carrier argued that the injury occurred as a result of the stick being thrown, rather than from the use of the vehicle. Acknowledging that it was true that the direct cause of the injury was the act of throwing the stick, the appellate panel, however, rejected the carrier's position that there must be a direct causal relationship between the use of the vehicle and the injury. Pointing out "that the phrase `arising out of' must be interpreted in a broad and comprehensive sense to mean `originating from' or `growing out of' the use of the automobile," the panel held that, when considering use, there need only be a showing of "a substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise." Id. at 38, 312 A.2d 664. It concluded that the act of throwing the stick from a vehicle is a "sufficiently foreseeable consequence of the use of [a] vehicle to mandate coverage." Id. at 39, 312 A.2d 664.
In Lindstrom, supra, 138 N.J. 242, 649 A.2d 1272, the plaintiff was shot in a drive-by shooting. Applying the test in Westchester, the Court explained that "[t]he assailant would not likely have committed such an act of apparently random violence without the use of a car." Id. at 252, 649 A.2d 1272; see also Diehl, supra, 296 N.J.Super. 231, 686 A.2d 785 (holding the automobile liability insurance covered injury to a plaintiff who was bit in the face by a dog that was in the open rear deck of a pickup truck).
Here, we are concerned with whether Arians' injury arose out of the more limited criteria of maintenance of a motor vehicle, albeit encompassed by the term "use." Am. Home Assurance Co. v. Hartford Ins. Co., 190 N.J.Super. 477, 480-83, 464 A.2d 1128 (App.Div.1983), involved a dispute between a carrier providing liability coverage *595 for a service station and automobile policies covering the car being serviced.[2] The driver of the automobile brought his vehicle to the service station to change a tire. After driving into the garage, the driver climbed into the trunk of the vehicle to secure the jack. Unbeknownst to the driver, the vehicle was raised on the lift, while the driver was in the trunk. When the driver attempted to climb out of the trunk, he fell onto the floor of the station, injuring himself. Pointing out that "the changing of a tire represent[s] an act of repair or maintenance," the panel determined that the service station operator had additional coverage as a permissible user under the vehicle's two automobile policies because the driver's injuries had a substantial nexus to maintenance of the automobile. Id. at 487-89, 464 A.2d 1128.
Generally, a person injured while in the process of unloading cargo from a vehicle is considered a user of the vehicle and thus entitled to coverage under an automobile policy because there is "`a substantial nexus between the injury and the use of the vehicle.'" Bellafronte v. Gen. Motors Corp., 151 N.J.Super. 377, 382-83, 376 A.2d 1294 (App.Div.) (quoting Westchester, supra, 126 N.J.Super. at 38, 312 A.2d 664), certif. denied, 75 N.J. 533, 384 A.2d 513 (1977). However, this nexus between injury and use must still be proven. In Wakefern, supra, 188 N.J.Super. at 79, 455 A.2d 1160, the plaintiff, while in the process of hooking up an electric cord to his refrigerated truck, tripped over a broken pallet located on the loading dock. The appellate panel rejected the premises insurer's contention that there was coverage under the motor vehicle policy's loading and unloading coverage noting, "`loading and unloading' clauses are intended to protect the named insured and others who, in the pick-up or delivery process, are actually using the motor vehicle and its contents during the `complete operation.'" Id. at 86-87, 455 A.2d 1160. Because the plaintiff's injury was occasioned by the negligent maintenance of the premises, which was "the only connection to that event," the panel determined that "no realistic social or public policy is served by straining to shift coverage." Id. at 87, 455 A.2d 1160 (emphasis added).
Unlike the facts in Wakefern, Arians' injuries were directly connected with the maintenance of Costa's pickup. It is undisputed that Farmers insured Costa, Costa was maintaining the vehicle at the time of the accident, and Arians approached with the intention to help Costa. Moreover, Arians' injuries were the direct consequence of his head hitting the protruding post of the bumper jack, which was being used for the vehicle's maintenance. Arians' injuries were not solely related to the existence of ice and snow but directly connected with the maintenance of the Ford pickup, thus coming within the exclusion in the homeowner's policy, and meeting the required substantial nexus.
The summary judgment declaring that the Gulf policy does not afford coverage is reversed and the matter remanded with directions to enter judgment in favor of Farmers and against Gulf. We do not retain jurisdiction.
NOTES
[1] Although Costa testified at depositions that his business was called Fleet Truck and Trailer Repair, it was named CWL Contracting/Franco Leasing in Penn National's complaint. CWL Contracting is the official corporate name of the company. It trades as Fleet Truck and Trailer Repair. Costa testified at his deposition that Franco Leasing no longer exists. The Gulf policy names as insured "CWL Contracting/Franco Leasing."
[2] The automobile used by the driver was leased to his employer and had two policies, one issued by Allstate to the leasing company and a second issued by Hartford to the driver's employer. Both policies afforded coverage for injuries "caused by any occurrence and arising out of the ownership, maintenance or use . . . of any automobile." Id. at 482, 455 A.2d 1160.