966 A.2d 1028

PENN NATIONAL INSURANCE COMPANY, PLAINTIFF, v. FRANK COSTA, JEANNE COSTA AND CWL CONTRACTING/FRANCO LEASING, DEFENDANTS, AND FARMERS INSURANCE COMPANY OF FLEMINGTON, DEFENDANT AND THIRD–PARTY–PLAINTIFF–RESPONDENT, v. ERNEST D. ARIANS, THIRD–PARTY DEFENDANT, AND THE TRAVELERS INDEMNITY COMPANY AS SUCCESSOR IN INTEREST BY MERGER TO GULF INSURANCE COMPANY, THIRD–PARTY DEFENDANT–APPELLANT.

Argued February 3, 2009—Decided March 25, 2009.

230

*John H. Maucher* argued the cause for appellant (*Mintzer Sarowitz Zeris Ledva & Meyers,* attorneys).

*Anthony P. Pasquarelli* argued the cause for respondent (*Sweet Pasquarelli,* attorneys).

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal presents a conflict in coverage between dueling insurance carriers.  A person was injured when he slipped and fell on an icy driveway; his head struck an automobile jack then being used to change a flat tire on a pickup truck.  The injured person

was not involved with the tire repair, and no claim was made that the repairs were being carried out negligently. He sued for his injuries and the homeowners insurance carrier settled that claim. The homeowners insurance carrier then asserted that the accident should have been covered by the automobile insurance carrier that covered the pickup truck. The trial court held that the accident was not covered by the automobile insurance policy, and, therefore, the homeowners insurance policy was required to respond. The Appellate Division, however, reversed. It concluded that the claim was within the coverage afforded by the automobile insurance policy.

We do not agree. Coverage under an automobile insurance policy is afforded to protect "against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a motor vehicle[.]" *N.J.S.A.* 39:6B–1(a). Whether any such liability is compensable under an automobile insurance policy—that is, whether the injury arises out of one of the qualifying criteria of "the ownership, maintenance, operation or use of a motor vehicle"—depends on whether there was a substantial nexus between one or more of the qualifying criteria and the injuries sustained. Because there was no substantial nexus between the injuries suffered and "the ownership, maintenance, operation or use of a motor vehicle[,]" we reverse the judgment of the Appellate Division holding the automobile insurance carrier liable for the injured person's losses, and we reinstate the judgment of the trial court assessing such liability on the homeowners insurance carrier.

I.

As developed in the context of cross-motions for summary judgment,[1] the relevant facts are as follows. Frank Costa owned

---

[1] Although in general, on appellate review of a summary judgment application, we view the facts in the light most favorable to the non-moving party, *Sciarrotta*

and operated a business that repaired large trucks,[2] and his home was located adjacent to his business. Ernest Arians was employed by Costa as a mechanic.

On January 20, 2004, as Arians was leaving Costa's business for his lunch break, he walked past Costa's home and saw Costa changing a tire on a pickup truck parked in his home's driveway. Arians walked up the driveway, approached Costa and offered to help replace the flat tire. Costa waved off that offer, telling Arians, "No, I'll do it. I'll take care of it, go to lunch." As Arians headed off to lunch, he slipped on some ice or snow remaining on the driveway, fell, and struck his head on the bumper jack Costa was using to lift the pickup truck and replace the flat tire. Arians suffered severe injuries as a result of the blow.

Arians sued Costa[3] to recover for the injuries Arians suffered. Penn National Insurance Company (Penn National), Arians's personal automobile insurance carrier, also filed an action in subrogation against Costa, his business and his homeowners insurance carrier, Farmers Insurance Company of Flemington (Farmers). In its suit, Penn National sought to recover what it had paid in personal injury protection benefits to Arians.[4]

---

v. *Global Spectrum*, 194 *N.J.* 345, 348, 944 A.2d 630 (2008) (citing *Daidone v. Buterick Bulkheading*, 191 *N.J.* 557, 560 n. 1, 924 A.2d 1193 (2007); *Soto v. Scaringelli*, 189 *N.J.* 558, 564, 917 A.2d 734 (2007)), the presence of cross-motions for summary judgment may tend to muddy that clear mandate. That said, all of the facts in this case were undisputed, thereby obviating any need to apply any presumptions favoring the non-moving party.

[2] There is some confusion in the record concerning the name of Costa's business. However, because none of the insurance carriers has alleged that Costa's business—however named—was not insured, the name of his business is immaterial.

[3] Arians's complaint also named Costa's wife and his business as party defendants. Their status, however, is irrelevant to the analysis and outcome of this case; therefore, we address only Costa as a representative of all named defendants.

[4] *See N.J.S.A.* 39:6A–4 (statutorily requiring coverage for "personal injury protection benefits for the payment of benefits ... to the named insured and

Both actions were consolidated. Farmers then answered and filed a third-party complaint, naming Arians and Gulf Insurance Company (Gulf),[5] Costa's automobile insurance carrier, as third-party defendants. Farmers asserted that Arians's injuries arose out of the maintenance of Costa's car and, for that reason, Gulf was liable for Arians's injuries. Farmers claimed that, according to the explicit terms of its homeowners insurance policy covering Costa's home and driveway, it specifically "do[es] not cover bodily injury or property damage arising out of ... [t]he maintenance, operation, ownership or use (including loading or unloading) of any ... motor vehicles ... owned or operated by, or rented or loaned to any insured."

Not surprisingly, Gulf, Costa's automobile insurance carrier, took the opposite view. It claimed that its coverage was limited to what is required by law—insurance coverage to protect "against loss resulting from ... bodily injury ... sustained by any person *arising out of* the ... maintenance, operation or use of a motor vehicle[,]" *N.J.S.A.* 39:6B–1(a) (emphasis supplied)—and that Arians's injuries did not arise out of the maintenance being performed on Costa's pickup truck.

Farmers and Gulf filed cross-motions for summary judgment, each claiming that the other was liable for Arians's injuries.[6] Ruling that Arians's injuries properly were subject to coverage

members of his family residing in his household who sustain bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as a pedestrian, caused by an automobile or by an object propelled by or from an automobile").

[5] Gulf was later acquired by merger by The Travelers Indemnity Company. That merger effects no material change to the facts, reasoning or conclusions herein.

[6] In the interim, Farmers had settled and paid Arians's claim against Costa in exchange for $400,000. As a result, the practical issue joined in this appeal is which insurance carrier is to bear the cost of that settlement: either Farmers or Gulf. The injured party—Arians—already has been made whole by insurance and no longer retains a stake in the outcome.

under Costa's homeowners insurance policy and not under Costa's automobile insurance policy, the trial court relied on *Wakefern Food Corp. v. General Accident Group*, quoting that:

> When an accident, such as the one here presented, is occasioned by negligent maintenance of the premises and the only connection to that event is the fact that the motor vehicle and its operator are present because a delivery or pick-up is to be made, no realistic social or public policy is served by straining to shift coverage. [188 *N.J.Super.* 77, 87, 455 *A.*2d 1160 (App.Div.1983).]

The trial court explained that "that's exactly the principle that should be applied here." It noted that "[w]e should not be shifting the coverage to the automobile, the motor vehicle coverage, but rather it is the negligen[t] accumulation, purportedly, of the ice and snow on the property that is the nexus of the case." Concluding that Arians's injuries "should be covered by the homeowner's policy[,]" the trial court denied Farmers' motion for summary judgment, and granted Gulf's cross-motion for summary judgment.

Farmers appealed, and the Appellate Division reversed. *Penn Nat'l Ins. Co. v. Costa*, 400 *N.J.Super.* 147, 946 *A.*2d 592 (App.Div. 2008). The panel referenced the substantial nexus test applied in *American Home Assurance Co. v. Hartford Insurance Co.*, 190 *N.J.Super.* 477, 464 *A.*2d 1128 (App.Div.1983), in respect of coverage for injuries caused in the "maintenance ... of a motor vehicle[,]" and determined that "Arians'[s] injuries were directly connected with the maintenance of Costa's pickup[,]" *Penn Nat'l Ins. Co., supra*, 400 *N.J.Super.* at 153, 946 *A.*2d 592. It therefore concluded that "Arians'[s] injuries were not solely related to the existence of ice and snow but directly connected with the maintenance of the Ford pickup, thus coming within the exclusion in the homeowner's policy, and meeting the required substantial nexus" with the automobile insurance policy. *Ibid.*

We granted Gulf's petition for certification, 196 *N.J.* 463, 957 *A.*2d 1171 (2008), to determine the scope of automobile liability insurance coverage in respect of "loss[es] resulting from ... bodily injury, death and property damage ... arising out of the ... maintenance, operation or use of a motor vehicle[.]" *N.J.S.A.*

39:6B–1(a). For the reasons that follow, we reverse the judgment of the Appellate Division and reinstate the judgment of the Law Division.

## II.

Gulf, the automobile insurance carrier, asserts that "the mere fact that the plaintiff in a premises liability lawsuit struck his head on a car jack as he fell forward [does not] implicate the automobile liability coverage instead of the homeowners coverage[.]" It further claims that it is unfair, in a premises liability case, to shift responsibility to an automobile insurance carrier "simply because the victim struck something related to the repair of an automobile while he was falling due to the dangerous conditions on the ground[.]"

In response, Farmers, the homeowners insurance carrier, asserts that Arians's accident arose from the maintenance of a motor vehicle and, therefore, it is proper to require that the automobile insurance carrier respond in damages. Farmers urges that the reasoning and conclusions of the Appellate Division were correct and should be affirmed.

## III.

### A.

The coverage portions of the homeowners insurance policy and the automobile insurance policy at issue are mutually exclusive. By the terms of Section IID.1.A of the Farmers homeowners insurance policy, coverage for "bodily injury ... arising out of ... [t]he maintenance ... of any ... motor vehicles ... owned or operated by, or rented or loaned to any insured" is specifically excluded. On the other hand, by statute and in almost identical terms, Gulf's automobile insurance policy specifically covers that which is specifically excluded under the homeowners insurance policy, that is, any "loss resulting from ... bodily injury ... sustained by any person arising out of the ... maintenance ... of

a motor vehicle[.]" *N.J.S.A.* 39:6B–1(a). Thus, this appeal presents a straightforward question: did Arians's injuries "arise out of" the maintenance of Costa's pickup truck? If the answer to that inquiry is "yes," then Costa's automobile insurance policy as issued by Gulf is obliged to respond; if the answer to that inquiry is "no," then it falls to Farmers, as Costa's homeowners insurance carrier, to assume liability. Our task, then, is to define when and in what circumstances an injury "arises out of" the maintenance of an automobile, a task to which we now turn.

## B.

As the Appellate Division correctly noted, several cases have been decided in the parallel context of injuries that "arise out of" the *use* of an automobile. *See Penn Nat'l Ins. Co., supra,* 400 *N.J.Super.* at 151, 946 *A.*2d 592 (collecting cases). Those cases reject the proposition that "the words 'arising out of the * * * use' require or justify the interpretation that before coverage exists it must appear that the injury is a direct and proximate result, in a strict legal sense, of the use of the automobile." *Westchester Fire Ins. Co. v. Continental Ins. Cos.,* 126 *N.J.Super.* 29, 37, 312 *A.*2d 664 (App.Div.1973), *aff'd o.b.,* 65 *N.J.* 152, 319 *A.*2d 732 (1974). Instead, the cases generally hold that

> the phrase "arising out of" must be interpreted in a broad and comprehensive sense to mean "originating from" or "growing out of" the use of the automobile. So interpreted, there need be shown only a substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise. The inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected. Whether the requisite connection or degree of relationship exists depends upon the circumstances of the particular case.
>
> [*Id.* at 38, 312 *A.*2d 664 (citation omitted).]

The almost universal utility of the substantial nexus test in the area of insurance coverage questions is evident from the breadth of contexts to which it has been applied. *See, e.g., Lindstrom v. Hanover Ins. Co.,* 138 *N.J.* 242, 649 *A.*2d 1272 (1994) (applying

substantial nexus test to determine availability of personal injury protection insurance benefits), *overruled on other grounds, Shaw v. City of Jersey City,* 174 *N.J.* 567, 811 *A.*2d 404 (2002); *Farmers' Mut. Ins. Co. of Salem County v. Allstate Ins. Co.,* 341 *N.J.Super.* 346, 775 *A.*2d 514 (App.Div.2001) (applying substantial nexus test to conflict between watercraft liability policy and homeowners policy); *Conduit & Found. Corp. v. Hartford Cas. Ins. Co.,* 329 *N.J.Super.* 91, 746 *A.*2d 1053 (App.Div.2000) (applying substantial nexus test to conflict between comprehensive general liability carrier and business automobile carrier); *Home State Ins. Co. v. Continental Ins. Co.,* 313 *N.J.Super.* 584, 713 *A.*2d 557 (App.Div. 1998) (applying substantial nexus test to conflict between automobile insurance policy and general liability policy); *Diehl v. Cumberland Mut. Fire Ins.,* 296 *N.J.Super.* 231, 686 *A.*2d 785 (App. Div.) (applying substantial nexus test to conflict between homeowners insurance policy and automobile insurance policy), *certif. denied,* 149 *N.J.* 144, 693 *A.*2d 112 (1997); *Bellafronte v. General Motors Corp.,* 151 *N.J.Super.* 377, 376 *A.*2d 1294 (App.Div.1977) (also applying substantial nexus test to conflict between automobile insurance policy and general liability policy).

That said, precious few cases have dealt with what the Appellate Division defined as "the more limited criteria of maintenance of a motor vehicle[.]" *Penn Nat'l Ins. Co., supra,* 400 *N.J.Super.* at 152, 946 *A.*2d 592. The Appellate Division identified but one case that squarely addressed whether certain injuries arose out of the maintenance of a motor vehicle. In that case, *American Home Assurance Co. v. Hartford Insurance Co.,* 190 *N.J.Super.* 477, 464 *A.*2d 1128 (App.Div.1983), the driver of a car [7] took it to a service station to replace a tire. The service station operator placed the car on a hydraulic lift in order to replace the tire. As he was doing so, the driver went to the rear of the car, opened the trunk, and was observed " 'reaching in, sort of bending over' the trunk."

---

[7] The car was owned by a leasing company that, in turn, leased it to the driver's employer; the automobile insurance policy covering the car was issued in the name of the leasing company.

*Id.* at 480, 464 *A.*2d 1128. The service station operator then raised the lift, unaware that, in the interim, the driver had climbed into the trunk of the car. After the car was raised to a height of some "six or seven feet above the floor of the service bay[,]" and as the service station operator was completing the tire replacement, he "heard a 'sort of thud' and then a 'groan.'" *Id.* at 481, 464 *A.*2d 1128. The car driver, apparently unaware that the car had been raised on the lift, stepped out of the trunk thinking it was still on the ground and was injured in the fall.

As that case unfolded, the question became which insurance carrier was required to respond to the driver's claim for damages: the service station's liability policy or the automobile policy covering the car. The court defined the core issue as "whether [the car driver]'s injury arose out of the maintenance or use of the automobile." *Id.* at 487, 464 *A.*2d 1128. As a threshold matter, it found that the activity involving the car at the time of the driver's injuries "more precisely constitutes 'maintenance' of the automobile." *Ibid.* It then reasoned that "the accident arose out of the maintenance of the automobile [and that] the maintenance of the automobile did not have to be the direct and effective cause of the accident." *Id.* at 488, 464 *A.*2d 1128. It explained that "[c]overage is afforded if there is a substantial nexus between the injury and the maintenance of the automobile." *Ibid.* It therefore concluded that "it is manifest that there was a substantial nexus between [the service station operator's negligent] maintenance of the automobile and [the driver]'s injury, thereby affording [the service station operator] coverage for [the driver]'s injury under the comprehensive automobile liability ... policies." *Id.* at 489, 464 *A.*2d 1128.

The Appellate Division endorsed that rationale. *Penn Nat'l Ins. Co., supra,* 400 *N.J.Super.* at 152, 946 *A.*2d 592. We do so also. In the aggregate, *Westchester Fire Insurance Co., Wakefern,* and *American Home Assurance Co.* demonstrate that, in order to trigger coverage under the liability portion of an automobile insurance policy, the injuries claimed must arise out of the

performance of one of the qualifying criteria—either the "owner-ship, maintenance, operation or use of a motor vehicle[,]" *N.J.S.A.* 39:6B–1(a). Those cases also explain that, at least in respect of the latter three criteria of "maintenance, operation or use of a motor vehicle[,]" automobile insurance coverage only comes into play if the injuries were caused by a negligent act and that negligent act, "although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected." *Westchester Fire Ins. Co., supra,* 126 *N.J.Super.* at 38, 312 *A.*2d 664. Synthesized into a more streamlined proposition, we explicitly hold that, in order to determine whether an injury arises out of the maintenance, operation or use of a motor vehicle thereby triggering automobile insurance coverage, there must be a substantial nexus between the injury suffered and the asserted negligent maintenance, operation or use of the motor vehicle. We address, then, the application of that test to the circumstances presented in this case.

## C.

■ Distinguishing *Wakefern, supra,* the Appellate Division concluded that "Arians'[s] injuries were directly connected with the maintenance of Costa's pickup." *Id.* at 153, 946 *A.*2d 592. It asserted that "[i]t is undisputed that Farmers insured Costa, Costa was maintaining the vehicle at the time of the accident, and Arians approached with the intention to help Costa." *Ibid.* It also noted that "Arians'[s] injuries were the direct consequence of his head hitting the protruding post of the bumper jack, which was being used for the vehicle's maintenance." *Ibid.* For that reason, the panel concluded that "Arians'[s] injuries were not solely related to the existence of ice and snow but directly connected with the maintenance of the Ford pickup, thus coming within the

exclusion in the homeowner[ ]s policy, and meeting the required substantial nexus." *Ibid.*

We cannot agree. Arians's injuries must bear a substantial, and not an incidental, nexus to the negligent maintenance of Costa's pickup truck. In that respect, there has been no allegation whatsoever that Costa in any way was negligent in the manner in which he repaired the flat tire—that is, how he performed the maintenance activities—on his pickup truck. That the negligence that caused Arians's injuries was Costa's failure to keep his driveway clear of snow and ice is beyond dispute; the fact that, in the act of falling, Arians's head struck a jack being used to repair a flat tire is an unfortunate but entirely incidental happenstance to the maintenance activity Costa was performing on his truck. Thus, unlike the car driver in *American Home Assurance Co., supra,* whose injuries bore a substantial nexus to the negligently performed maintenance activity of lifting the car while the driver was in the area of the car trunk, there is no rational linkage between the negligent failure to clear the driveway of snow and ice and the entirely non-negligent maintenance activity in which Costa was engaged. Again, this must be so because a substantial nexus exists only when "the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the [maintenance] of the automobile[.]" *Westchester Fire Ins. Co., supra,* 126 *N.J.Super.* at 38, 312 *A.*2d 664. In a nutshell, that simply was not the case here.

In our view, *Wakefern* presents the clearest analysis and conclusions most consistent with our statement of the substantial nexus test. Echoing circumstances and considerations similar to the ones presented here, it explains that "[w]hen an accident ... is occasioned by negligent maintenance of the premises and the only connection to that event is the fact that the motor vehicle [is] present ..., no realistic social or public policy is served by straining to shift coverage." *Wakefern, supra,* 188 *N.J.Super.* at 87, 455 *A.*2d 1160. Driving the point home, it further notes that,

in this setting, "no reasonable contractual expectations are disappointed or denied and the reasonable expectation of the parties ... is hardly placed at hazard." *Ibid.* (citation and internal quotation marks omitted).

That reasoning applies with equal force here. It compels the serially logical conclusions that Arians's injuries did not arise from the maintenance of Costa's pickup truck; that Gulf's automobile insurance coverage was not triggered; and that the homeowners insurance policy issued by Farmers must respond to Arians's claim.

## IV.

The judgment of the Appellate Division is reversed, and the judgment of the Law Division is reinstated in all respects.

*For reversal and reinstatement*—Chief Justice RABNER and Justices LONG, LaVECCHIA, WALLACE and RIVERA-SOTO—5.

*Opposed*—None.