**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0055-22

BRIDGEWATER DONUTS, LLC,
and TAMAR, INC.,

     Plaintiffs-Appellants,

v.

GEICO INDEMNITY COMPANY,

     Defendant-Respondent.

_____

Argued September 20, 2023 – Decided July 9, 2024

Before Judges Vernoia and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1509-21.

Adam M. Maurer argued the cause for appellants (Kinney Lisovicz Reilly & Wolff, PC, attorneys; Adam M. Maurer, of counsel and on the briefs).

Walter H. Iacovone argued the cause for respondent (Margolis Edelstein, attorneys; Walter H. Iacovone, on the brief).

PER CURIAM

Plaintiffs Bridgewater Donuts, LLC and Tamar, Inc. appeal from orders: (1) granting defendant Geico Indemnity Co. summary judgment on plaintiffs' claim they are entitled to a defense and indemnity under an automobile liability policy issued by defendant to Susan Mendelsohn-Hall; and (2) denying plaintiffs' motion for summary judgment on their claimed entitlement to coverage under the policy. Plaintiffs had sought coverage under the policy after Mendelsohn-Hall alleged she suffered personal injuries when plaintiffs' employees spilled hot tea she had purchased while delivering the tea to her as she sat in her automobile at a drive-up window at plaintiffs' donut shop. The court determined plaintiffs are not entitled to a defense and indemnification as an additional insured under Mendelsohn-Hall's automobile policy because plaintiffs were not using her vehicle when their alleged negligence caused the injuries for which she seeks a damages award against them. We reverse.

I.

We summarize the undisputed material facts from the summary judgment record, viewing the evidence in a light most favorable to plaintiffs as the non-moving parties, and drawing all reasonable inferences in their favor. See Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023).

A-0055-22

Plaintiffs own and operate a Dunkin' Donuts restaurant. Mendelsohn-Hall filed suit against plaintiffs alleging she suffered injuries "while driving her 2019 Honda Civic through the Dunkin' Donuts drive-through" window. Mendelsohn-Hall alleges she was scalded by hot tea as it was delivered to her by plaintiffs' employees.

In her complaint, Mendelsohn-Hall alleged her injuries were proximately caused by plaintiffs' negligence. She asserted the tray on which the hot tea had been placed "was improperly handed, loaded, and/or balanced" thereby causing the hot tea to spill onto her "lap and stomach" and plaintiffs caused "the dangerous condition and/or failed to act and/or acted negligently in maintaining the proper care when preparing and/or serving their products."[1] The complaint also included a claim against PACTIV, LLC—the alleged manufacturer of the "carrier tray[] for [the] hot beverages" served by plaintiffs—asserting the tray was defective and dangerous and had caused Mendelsohn-Hall's injuries.

On the day Mendelsohn-Hall was injured, she was covered by a New Jersey Family Automobile Insurance Policy issued by defendant. In pertinent part, the policy provides coverage for bodily injury and defines the damages

_____

[1] We refer to the allegations in Mendelsohn-Hall's second-amended complaint, which was the operative complaint when plaintiffs sought the coverage from defendant that is at issue on appeal.

3

defendant agreed to cover to include those "an insured becomes legally obligated to pay because of . . . [b]odily injury sustained by a person, and . . . property damage . . . arising out of the ownership, maintenance or <u>use</u> of [an] owned or non-owned auto."[2] (Emphasis added). The policy further provides defendant "will defend any suit for damages payable under the" policy's terms. The policy defines the persons insured to include Mendelsohn-Hall as the insured, her relatives, and "[a]ny other person <u>using</u> the auto" with her permission. (Emphasis added).

Prior to the filing of Mendelsohn-Hall's complaint, plaintiffs had sought from defendant a defense and indemnification under Mendelsohn-Hall's auto policy against any claims she made against them arising from the incident during which she had sustained her injuries. Plaintiffs claimed they were entitled to coverage based on what they characterized as the "loading and unloading" doctrine.[3] Defendant denied coverage, claiming plaintiffs' conduct as alleged

---

[2] The policy includes bodily-injury coverage limits of $100,000 for each person and $200,000 for each occurrence.

[3] We recognize the letter requesting coverage was sent by counsel on behalf of plaintiff Tamar, Inc., but in plaintiffs' statement of material facts they assert the letter was also sent on behalf of plaintiff Bridgewater Donuts, LLC. Defendant does not dispute that the request for coverage was made on behalf of both plaintiffs.

by Mendelsohn-Hall in the complaint did not fall within the "loading and unloading" doctrine such that plaintiffs had used her vehicle in a manner that rendered plaintiffs other insureds under the auto policy. In other words, defendant denied coverage based on its claim plaintiffs' "alleged negligence was not incidental to the use of the vehicle and did not bear a substantial nexus to the vehicle's use" such that plaintiffs were covered under the policy.

Following the filing of Mendelsohn-Hall's suit against plaintiffs, plaintiffs filed a complaint against defendant seeking a declaratory judgment that they were additional insureds under the policy because Mendelsohn-Hall's alleged injuries were caused by plaintiffs' alleged negligence while loading by delivering the tea to Mendelsohn-Hall while she was in her automobile at the drive-up window. Defendant also moved for summary judgment, arguing plaintiffs had not been using Mendelsohn-Hall's vehicle when she sustained her injuries and therefore plaintiffs were not additional insureds—as users of the automobile—under the policy or applicable law.

After hearing argument, the court issued an order granting defendant's motion for summary judgment and dismissing plaintiffs' complaint, and a separate order again granting defendant's motion for summary judgment and denying plaintiffs' motion for summary judgment. The orders were supported

5

by a written decision detailing the court's findings and reasoning supporting its conclusion plaintiffs did not qualify as additional insureds under Mendelsohn-Hall's auto policy because her injuries were not directly attributable to the loading of the tea by plaintiffs into Mendelsohn-Hall's vehicle. Plaintiffs appeal from the court's orders.

## II.

We review a grant or denial of summary judgment de novo, applying the same legal standard as the trial court. Crisitello, 255 N.J. at 218. That standard requires that we "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "We owe no deference to conclusions of law that flow from established facts." Crisitello, 255 N.J. at 218 (citing State v. Perini Corp., 221 N.J. 412, 425 (2015)); see also DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 181 (2024) ("When 'only a question of law remains, [we] afford[] no special deference to the legal determinations of the trial court.'" (quoting Templo Fuente

A-0055-22

De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016))).

Prior to addressing plaintiffs' arguments, we briefly summarize the legal principles that guide our analysis.

N.J.S.A. 39:6A-3 requires that automobile owners "shall maintain automobile liability insurance coverage," "insuring against loss . . . arising out of the ownership, maintenance, operation[,] or use of an automobile." (Emphasis added). See also N.J.S.A. 39:6B-1(a). "'[T]he phrase "arising out of" must be interpreted in a broad and comprehensive sense to mean "originating from" or "growing out of" the use of the automobile.'" Penn Nat'l Ins. Co. v. Costa, 198 N.J. 229, 237 (2009) (quoting Westchester Fire Ins. Co. v. Cont'l Ins. Cos., 126 N.J. Super. 29, 37 (App. Div. 1973), aff'd o.b., 65 N.J. 152 (1974)). Our Supreme Court has explained that mandatory coverage arising out of the use of an automobile "'must be broadly construed in order to effectuate the overriding legislative policy of assuring financial protection for the innocent victims of motor vehicle accidents.'" Kennedy v. Jefferson Smurfit Co., 147 N.J. 394, 403-04 (1997) (quoting Bellafronte v. Gen. Motors Corp., 151 N.J. Super. 377, 382 (App. Div. 1977)).

"Implicit within" the requirement that automobile owners maintain liability coverage insuring against losses arising out of the use of an automobile is the carrier's "obligation to provide omnibus liability coverage to all persons who 'use' the named insured's vehicle by participating in its loading or unloading." Pisaneschi v. Turner Constr. Co., 345 N.J. Super. 336, 343 (App. Div. 2001). Thus, it is well-settled that in imposing the mandate for liability coverage insuring against losses arising out of the "use" of an automobile, the term "use" broadly includes the acts of loading and unloading the automobile. Id. at 398 (citations omitted); see also Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp., Inc., 119 N.J. 402, 407-08 (1990) (explaining a compulsory automobile insurance statute mandating the provision of liability coverage for someone who uses an automobile includes coverage as an additional insured for an individual injured while loading and unloading an automobile); Bellafronte, 151 N.J. Super. at 382-83 ("[O]ne who is in the process of unloading cargo from the vehicle is, for the purposes of the omnibus coverage, a user of the vehicle."). The obligation to provide such coverage arises under statute and cannot be excluded in an insurance policy. Potenzone v. Annin Flag Co., 191 N.J. 147, 152-53 (2007).

In determining whether a party is an additional insured as a user of an automobile during the loading and unloading of a vehicle, we are required to consider the "'complete operation'" of loading and unloading, "which merely requires '"that the act or omission which resulted in the injury was necessary to carry out the loading or unloading."'" Craggan v. IKEA USA, 332 N.J. Super, 53, 66 (App. Div. 2000) (quoting Drew Chem. Corp. v. Am. Fore Loyalty Grp., 90 N.J. Super. 582, 586 (App. Div. 1966)). Under loading-and-unloading principles, "'the distinction between preparations for loading and the act of loading is obliterated[,]'" ibid. (quoting Kennedy, 147 N.J. at 400), and a party is deemed to have been engaged in loading or unloading—and is therefore deemed a user on an automobile—during the "'entire process' of moving goods[,]" ibid. (quoting Drew Chem. Corp., 90 N.J. Super. at 586-87).

"The critical issue" in the analysis "is whether" the alleged tortfeasor's acts or omissions were "an integral part of the loading activity, and thus covered under the 'use' provision" of the statute. Kennedy, 147 N.J. at 401. Stated differently, to qualify as an additional insured as a user of an automobile, it must be shown that "'the negligent act which caused the injury or is alleged to have caused it constitute[d] a part of the loading and unloading process.'" Id. at 400 (quoting Cenno v. W. Va. Paper & Pulp Co., 109 N.J. Super. 41, 45 (App. Div.

1970)); see also Penn Nat'l Ins. Co., 198 N.J. at 240 ("[I]n order to determine whether an injury arises out of the maintenance, operation or use of a motor vehicle thereby triggering automobile insurance coverage, there must be a substantial nexus between the injury suffered and the asserted negligent maintenance, operation or use of the motor vehicle.").

Mandatory liability coverage for use of an automobile is not without limitation. "[I]t is not intended to insure all defendants against all claims arising from any accident in any way incident to loading/unloading irrespective of causation, that is, irrespective of the defendant's actual involvement with the insured vehicle itself." Pisaneschi, 345 N.J. Super. at 343. Mandatory liability coverage for use of an automobile is, however, "'intended to protect the named insured and others who, in the pick-up or delivery process, are actually using the motor vehicle and its contents during the "complete operation"' of that vehicle." Id. at 344 (quoting Ryder/P.I.E. Nationwide, Inc., 119 N.J. at 409).

In Penn National Insurance Co., the Court explained that "to trigger coverage under the liability portion of an automobile insurance policy, the injuries claimed must arise out of the performance of one of the qualifying criteria—either the 'ownership, maintenance, operation or use of a motor

10

vehicle.'" 198 N.J. at 239-40 (quoting N.J.S.A. 39:6B-1(a)). The Court further noted that where a claim for coverage arises out of the alleged use of the vehicle,

> automobile insurance coverage only comes into play if the injuries were caused by a negligent act and that negligent act, "although nor foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected."
>
> Id. at 240 (quoting Westchester Fire Ins. Co., 126 N.J. Super. at 38).

The Court held that "in order to determine whether an injury arises out of the . . . use of a motor vehicle thereby triggering automobile insurance coverage, there must be a substantial nexus between the injury suffered and the asserted negligent . . . use of the motor vehicle." Ibid.

Here, assessing the alleged "negligent . . . use" of Mendelsohn-Hall's motor vehicle under the Penn National Insurance Co. standard necessarily requires consideration of whether there was any alleged negligence in the loading or unloading of her automobile. Ibid. That is because, as noted, loading or unloading a motor vehicle constitutes a use of the vehicle for purposes of determining whether a party is an additional insured under an automobile liability policy. Ryder/P.I.E. Nationwide, Inc., 119 N.J. at 407-08; Pisaneschi,

11

345 N.J. Super. at 343; Craggan, 332 N.J. Super. at 64-65. As such, under the Court's holding in Penn National Insurance Co., plaintiffs are entitled to coverage as additional insureds if there is a substantial nexus between Mendelsohn-Hall's claimed injuries "and the asserted negligent . . . use"—the loading or unloading—"of [her] motor vehicle." 198 N.J. at 240. The record supports a finding of the requisite substantial nexus here.

On the day she was injured, Mendelsohn-Hall used the drive-up window plaintiffs had made available to their customers to purchase and pick up items plaintiffs offered for sale—including hot tea—while in their automobiles. A reasonable inference that may be drawn from those undisputed facts is that plaintiffs provided the drive-up window so that their customers would pick up their purchases without exiting their vehicles and then, after their purchases were loaded into their vehicles, use those vehicles to transport the purchased items from the drive-up window to another location. Mendelsohn-Hall's vehicle was required for the transaction at the drive-up window and, unless she had opted to pay for her purchase and drive away without it, loading the tea she had purchased into her vehicle before driving away was integral to the completion of the transaction and expected by plaintiffs and Mendelsohn-Hall.

A-0055-22

The process of transferring plaintiffs' product—in this case, hot tea—into Mendelsohn-Hall's vehicle was an essential part of the process of loading the tea into the automobile so that it could be transported in the vehicle from the drive-up window to another location. See Kennedy, 147 N.J. at 399-400. And, as we have explained, a party is deemed to be a user of an automobile during the "'entire process' of moving goods." Craggan, 332 N.J. Super. at 66 (quoting Drew, 90 N.J. Super. at 586-87).

There is a substantial nexus between Mendelsohn-Hall's alleged injuries and the use—the loading of the hot tea for transport from the drive-up window— of Mendelsohn-Hall's automobile. She alleges she suffered her injuries as a direct result of what she claims was plaintiffs' employee's negligence during the loading process.[4] Penn Nat'l Ins. Co., 198 N.J. at 240. Mendelsohn's injuries therefore "bear a substantial, and not an incidental, nexus to" plaintiffs' alleged

---

[4] We appreciate that Mendelsohn-Hall's complaint also alleges her injuries were proximately caused by the defective carrying tray on which the hot tea had been placed. Her complaint includes a cause of action against the tray's manufacturer on that basis. Those allegations do not require that we ignore her other claim that plaintiffs' employees negligently transferred the hot tea during the process of loading it into Mendelsohn-Hall's automobile in our determination of whether plaintiffs are additional insureds under Mendelsohn-Hall's automobile policy with defendant. See, e.g., Flomerflet v. Cardiello, 202 N.J. 432, 447 (2010) (explaining generally an "insurer is obligated to provide a defense until all potentially covered claims are resolved").

A-0055-22

negligent use—during the loading process—of Mendelsohn-Hall's automobile, and plaintiffs are entitled to coverage as additional insureds under Mendelsohn-Hall's policy. Id. at 241.

Defendant does not dispute that Mendelsohn-Hall was injured during the process of loading the hot tea into her vehicle, and it recognizes "the [l]oading and [u]nloading [d]octrine applies when the alleged negligence arises as part of the loading process." However, defendant contends plaintiffs are not entitled to coverage because plaintiffs' alleged negligence was not integral to the loading process of Mendelsohn-Hall's vehicle.

In support of its position, defendant relies on our decision in Cenno where we determined the company responsible for placing bands around a bale of cardboard prior to the bale's shipment was not an additional insured under the automobile liability policy for the truck on which the bale was shipped. 109 N.J. Super. at 43-45. During the unloading of the bales from the truck, its driver pulled on one of the bands, which broke and caused the driver to fall. Id. at 44. The driver suffered injuries and sued the companies that had banded the bales of cardboard and had manufactured the bands. Id. at 43-44. Those companies sought a defense as additional insureds from the insurance carrier that provided

the comprehensive liability policy for the truck used during the transport of the bales. Id. at 44.

We reversed the trial court's determination the companies were additional insureds under the policy. Id. at 45. We explained that the claims against the companies were founded on the contention that the bands were defective, or the bales had been negligently banded. Ibid. We reasoned that the alleged negligence of the companies "antedated" the loading of the truck, was "unrelated to the loading or unloading of the truck, and [was] not covered by the comprehensive liability policy." Ibid.

We further explained that to qualify for coverage as an additional insured during the loading and unloading process, the negligent "acts alleged to have caused the accident" must be "within reason, causally connected with the complete operation of loading or unloading." Id. at 47. We concluded a party "is not considered to have been using [a] vehicle so as to be covered" as an additional insured under an automobile liability policy, "unless the alleged negligent act which is alleged to have caused the accident was an integral part of the overall loading or unloading operation, so that the mishap is causally connected with such loading or unloading and did not merely occur during it." Ibid.

15

Defendant's reliance on Cenno is misplaced because our holding there supports our determination here. As we have explained, plaintiffs' alleged negligence in causing Mendelsohn-Hall's injuries was integral, not incidental, to the loading process. It was plaintiffs' employee's alleged negligence during the loading process—the delivery of tea for its transport by Mendelsohn-Hall in her vehicle—that she claims caused her injuries.[5]

We also reject defendant's claim that finding defendant must provide coverage to plaintiffs as additional insureds under Mendelsohn-Hall's automobile policy violates public policy. As the Court explained in Kennedy, "[t]he Legislature [has] mandated omnibus coverage for" losses arising out of the "'use of an automobile,'" 147 N.J. at 403 (quoting N.J.S.A. 39:6A-3), that "coverage in New Jersey 'must be broadly construed,'" id. at 403-04 (quoting

_____

[5] For the same reasons, we reject defendant's reliance on our decisions in Forsythe v. Teledyne Turner Tube, 209 N.J. Super. 608 (App. Div. 1986), and Neuman v. Wakefern Food Corp., 205 N.J. Super. 263 (App. Div. 1985). As our Supreme Court explained in Kennedy, Forsythe and Neuman are among those "premises-liability cases deny[ing] coverage under . . . automobile polic[ies] for accidents occurring during loading and unloading activities because the accident[s] arose not from the loading or unloading activities, but from the negligent acts of the owner of the premises where the accident occurred, prior to the loading or unloading of the vehicles[s]." 147 N.J. at 401-02. Those cases have no application where, as here, the alleged negligence on which the underlying claims for which coverage is sought arose directly during the loading process and is therefore integral to that process. See id. at 402-03.

A-0055-22

Bellafronte, 151 N.J. Super. at 382), and "the 'broad scope of [that] coverage'" includes "'accidents arising during loading and unloading[,]'" id. at 404 (emphasis in original) (quoting Ryder/P.I.E. Nationwide Inc., 119 N.J. at 408). We therefore conclude, as did the Court in Kennedy, that "[m]aintaining the broad scope of statutorily mandated automobile coverage fosters, rather than offends, public policy." Ibid.

In sum, we reverse the court's orders granting summary judgment to defendant and denying plaintiffs' motion for summary judgment. We note that in plaintiffs' brief on appeal, they request that we define in some manner the nature and extent of defendant's obligation to provide a defense and indemnification under the automobile liability policy. The motion court did not address those issues directly because it determined plaintiffs were not additional insureds under the policy. We decline to address those issues in the first instance. To the extent there are any issues or disputes concerning the nature and extent of defendant's obligation to defend and indemnify plaintiffs under the policy, they shall be first submitted for resolution to the trial court. See generally Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018) (emphasis in original) (citation omitted) ("Although our standard of review from the grant of a motion for summary judgment is de novo, our

A-0055-22

function as an appellate court is to review the decision of the trial court, not to the decide the motion <u>tabula rasa</u>.").

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION